FILED
08 APR -7 AM 9:58
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PURE BIOSCIENCE, a California Corporation,<br><br>                          Plaintiff,<br>vs.<br><br>ROSS SYSTEMS, INC., a Delaware Corporation,<br><br>                          Defendant. | CASE NO. 07-CV-1117 W (WMC)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (Doc. No. 20)** |

On October 24, 2007 Plaintiff Pure Bioscience ("Plaintiff" or "Pure") filed an amended complaint against Defendant Ross Systems, Inc. ("Defendant" or "Ross") alleging contract violations and seeking rescission and/or a return of purchase price. (Doc. No. 18.)  On November 13, 2007 Defendant moved to dismiss Plaintiff's complaint. (Doc. No. 20.) The Court takes the matter under submission and without oral argument. See S.D. Cal. Civ. R. 7.1(d.1).  For the following reasons, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's Amended Complaint **WITHOUT PREJUDICE.**  (Doc. No. 20.)

///
///
///
///

## I. BACKGROUND

Plaintiff Pure Bioscience is an El Cajon, California company engaged in complex process manufacturing in the chemical and life sciences industry. (*Am. Compl.* ¶¶ 1, 4.) Defendant Ross Systems, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia. (*Id.* ¶ 2.) Ross markets the "iRenaissance" software package which purportedly helps chemical and life science manufacturers manage inventory and streamline production. (*Id.* ¶ 5; *Am. Compl.* Ex. 4 at 1 [hereinafter *License Agreement*].)

In July 2005, Plaintiff and Defendant started negotiating a deal whereby Plaintiff would buy and implement the iRenaissance software package. (*Am. Compl.* ¶ 6.) Defendant allegedly represented that iRenaissance would improve productivity, track inventory, and was easy to use. (*Id.*) Defendant also allegedly made scores of other promises regarding iRenaissance's industry-specific capabilities. (*Id.*) In August 2005, Defendant demonstrated to Plaintiff a seemingly successful small-scale test of the iRenaissance package. (*Id.* ¶ 7.)

On March 30, 2006 Plaintiff and Defendant executed (1) a "Software License and Professional Agreement" ("Software License" or "contract") and (2) a "Statement of Work and Master Work Order for Pure Bioscience" ("Work Statement"). (*License Agreement; Am. Compl.* Ex. 5 [hereinafter *Work Statement*].) Under the License Agreement, Defendant granted Plaintiff a nonexclusive software license and promised to provide maintenance services for one year. (*License Agreement* §§ 2(A), 4(A).) Defendant warranted that the iRennaissance software would operate in substantial conformance with specifications set forth in the Software documentation. (*Id.* § 7(B).) The sole remedy for the breach of this warranty was the License Agreement's provision for maintenance services. (*Id.*) Under the Work Statement, Defendant agreed to assist Plaintiff in implementing the iRenaissance software package. (*Work Statement* 3.) Plaintiff, in preparation for the implementation, bought $35,000 worth of computer

hardware. (*Id.* ¶ 10.)

On July 17, 2006 Defendant commenced implementing the iRenaissance software on Plaintiff's computer system. (*Id.* ¶ 11.) Numerous problems followed. (*Id.*) Plaintiff alleges that the iRenaissance software did not perform as promised and Defendant's implementation efforts and support staff were woefully deficient. (*Id.* ¶¶ 11–28.)

In late 2006 through first quarter 2007, Plaintiff allegedly communicated to Defendant its dissatisfaction with the iRenaissance software and installation and gave Defendant many opportunities to remediate the problems. (*Id.* ¶ 29.) Defendant allegedly did not do so. (*Id.*) On June 18, 2007 Plaintiff allegedly provided Defendant with a notice of rejection and/or revocation of acceptance. (*Id.*)

On June 20, 2007 Plaintiff filed an action against Defendant in this Court alleging breach of contract, breach of express and implied warranty, and rejection of goods and/or revocation of acceptance. (Doc. No. 1.) Generally, Plaintiff alleged that it had paid Defendant $159,054.96 and received nothing of value in return. (*Id.*) On September 12, 2007 Defendant moved to dismiss Plaintiff's original complaint. (Doc. No. 14.) On October 24, 2007 Plaintiff filed an amended complaint on roughly the same facts and on October 30, 2007 the Court denied Defendant's motion to dismiss as moot. (Doc. Nos. 18, 19.) On November 13, 2007 Defendant moved to dismiss the amended complaint. (Doc. No. 20.) On January 7, 2008 Plaintiff opposed. (Doc. No. 23.) On January 14, 2008 Defendant filed its reply. (Doc. No. 24.)

## II.   LEGAL STANDARD

Rule 12(b)(6) permits the court to dismiss a complaint, or a count therein, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under this rule tests the complaint's sufficiency. See N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of a claim according to this rule is proper only in "extraordinary" cases. United States v. Redwood City, 640

F.2d 963, 966 (9th Cir. 1981). However, where the facts and dates alleged in the complaint indicate the claim is barred by the statute of limitations, a motion to dismiss for failure to state a claim is appropriate. Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).

Generally, the court may not consider material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the court may consider any documents specifically identified in the complaint whose authenticity is not questioned by the parties. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. Id. That said, the Court will consider both the License Agreement and Work Statement attached to Plaintiff's amended complaint and referenced by both parties.

## III. DISCUSSION

### A. Pure Has Waived Any Alleged Right of Rescission for Fraud, Mistake, or Failure of Consideration

Plaintiff premises its first cause of action, Return of Purchase Price per Common Law Rescission, on three grounds: (1) Fraud/Deceit; (2) Mutual Mistake; and (3) Total Failure of Consideration. (*Am. Compl.* ¶¶ 32, 33, 34.) Defendant argues that Plaintiff, by filing its original complaint asserting breach of contract and warranty claims, affirmed the License Agreement and waived its right to rescind. (*Def.'s Mot.* 8.) Plaintiff contends that Georgia law allows a plaintiff to pursue inconsistent remedies up until the case is submitted to a jury. (*Pl.'s Opp'n* 5–8.)

Several issues make these arguments difficult for the Court to untangle. First, Plaintiff's opposition arguments are disorganized and substitute block quotes for analysis. Second, Defendant cites authority primarily concerned with explaining the various meanings of "rescission" under law and equity. Nevertheless, the Court agrees

with Defendant.

In Georgia, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages; or (2) promptly rescind the contract and sue in tort for fraud. Mitchell v. Backus Cadillac-Pontiac, Inc., 618 S.E.2d 87, 92 (Ga. Ct. App. 2005).[1] An announcement of the intent to rescind the contract must be made in a timely fashion, as soon as the facts supporting the claim for rescission are discovered. Holloman v. D.R. Horton, 524 S.E.2d 790, 795 (Ga. Ct. App. 1999). However, where a party who is entitled to rescind a contract because of fraud freely and advisedly does anything which amounts to a recognition of the transaction or acts in a manner inconsistent with a repudiation of the contract, such conduct amounts to acquiescence and he cannot later rescind. Liberty v. Storage Trust Props. L.P., 600 S.E.2d 841, 846 (Ga. Ct. App. 2004).

Georgia courts are quick to seize upon any waiver of the right to rescind, such as where a plaintiff asserts a cause of action for breach of contract alongside a rescission claim. See id. at 846–47 (holding that plaintiff, by praying for damages for breach of contract, took an action inconsistent with a repudiation of the transaction and lost his right to rescind). Plaintiffs can waive their right to rescind where their original complaint affirmed the contract, even if their amended complaint alleges a rescission claim only. See Holloman, 524 S.E.2d at 795–96 (finding that original complaint affirming the contract operated as an election of remedies to waive amended

---

[1] Although Plaintiff does not argue against the application of Georgia law, the Court finds that Georgia law controls, even if Plaintiff alleges fraud in the inducement. Under Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) a court exercising diversity jurisdiction applies the choice-of-law principles of the state in which it sits. Under California law, the enforceability of a choice-of-law provision, like the License Agreement's Georgia law provision, is governed by the Restatement of Conflicts of Laws and the California Supreme Court's decision in Nedlloyd Lines B.V. v. Superior Court, 834 P.2d 1148 (Cal. 1992). California law broadly construes contractual choice-of-law provisions, and will apply the agreed-upon law when two sophisticated, commercial entities agree to a choice-of-law clause because the most reasonable interpretation of their actions is that they intended for the clause to apply to all causes of action arising from *or related to* their contract. General Signal Corp. v. MCI Telecommunications Corp., 66 F.3d 1500, 1506 (9th Cir. 1995) (emphasis original) (citing Nedlloyd, 834 P.2d at 1153.) Plaintiff has not argued that California law displaces the agreed-upon choice-of-law provision or that Georgia law is somehow inconsistent with the Restatement's principles.

complaint's rescission claim, even where original complaint included a prayer for rescission); see also Holloman, 524 S.E.2d at 795–96 (holding that prayer for relief is not an allegation in the complaint requiring an answer).

Unfortunately for Plaintiff, its original complaint's breach of contract and warranty claims, and absence of rescission claim, operated to affirm the contract and waive the right to rescind under Georgia law.[2] See, e.g., Holloman, 524 S.E.2d at 796 ("[t]he original complaint, by affirming the contract and seeking damages resulting from the alleged fraud without alleging any cause of action for rescission, constituted an election of remedies and waiver of any rescission claim."); Owens v. Union City Chrysler-Plymouth, 436 S.E.2d 94, 96 (Ga. Ct. App. 1993) (finding waiver of rescission where plaintiff's original complaint sought money damages rather than rescission). Arguably, Plaintiff had already waived the right to rescind long before, when it pressed Defendant to fix the implementation bugs pursuant to Defendants' responsibilities under the License Agreement and Work Statement. (See Am. Compl. ¶¶ 11–12, 23, 27, 29.)

Moreover, by arguing a total failure of consideration where Defendant failed to honor the License Agreement's "repair and replace" provision, Plaintiff's own response in opposition is inconsistent with repudiating the contract. (See Pl.'s Opp'n 4.) Arguing that consideration failed presupposes an enforceable contract obligating one party to act on a promise. Although Plaintiff cites Lanier Home Center, Inc. v. Underwood, 557 S.E.2d 76 (Ga. Ct. App. 2001) to bolster its common law rescission claim, Lanier discusses equitable rescission as a *remedy* for a severe breach of contract—the court does not implement rescission as an independent claim in its own right.

---

[2] After thoroughly reviewing Plaintiff's Amended Complaint, the Court is convinced that Plaintiff is attempting to choose the second "rescind and sue" option cited in Mitchell, 618 S.E.2d at 92 because Plaintiff is claiming the right to rescind, praying for the return of purchase price, and alleging to offer Defendant the return of anything of value. (Am. Compl. ¶ 35.) These are all relevant allegations to disavowing the contract and asserting the right of common law rescission, rather than affirming the contract and suing for damages. See Brown v. Techdata Corp., 234 S.E.2d 787, 791–92 (Ga. 1977) (discussing tender requirements for rescission at law and in equity).

Nor does Plaintiff confront Defendant's authority, which directly addresses waiving the right to rescind when a party files a breach of contract complaint. Plaintiff instead relies on Georgia cases concerning when (procedurally) a party must elect the *remedy* of rescission, such as when a party alternately pleads in tort for fraud and in contract for breach. See, e.g., Tankersley v. Barker, 651 S.E.2d 435, 438 (Ga. Ct. App. 2007) (reversing judgment because court allowed plaintiff double recovery for fraud and breach of contract), Waller v. Scheer, 332 S.E.2d 293, 297–98 (Ga. Ct. App. 1985) (discussing when a plaintiff must choose between remedies for a fraud claim and breach of warranty claim). None of Plaintiff's cases directly involve the situation where a party waived the *right* to assert a claim for common law rescission.[3] Succinctly, the dispute between Plaintiff and Defendant may afford Plaintiff a remedy of rescission; but under Georgia law it has waived a claim for the right to common law rescission. Accordingly, the Court must **GRANT** Defendant's motion and **DISMISSES** Plaintiff's first claim for the right to common law rescission **WITHOUT PREJUDICE**.[4]

### B. Pure's Second Rejection/Revocation Claim Fails Because It Does Not Allege That the Software Fails to Conform to the Parties' Contract

Plaintiff's second claim, that Plaintiff is entitled to reject or revoke acceptance of Defendant's software, appears to proceed on two theories: (1) Defendant's software failed to perform as represented, and (2) Defendant's ability to remedy the software problems was inadequate. (*Am. Compl.* ¶ 37.) The Court finds that, regardless of the

---

[3] Indeed, Plaintiff may still have a fraudulent inducement action if properly pled: "It can not be said that merely affirming the contract by the defrauded party will necessarily deprive him of the right to sue for damages for the fraud inducing him to make the contract, as the right to affirm and the right to sue for damages for the fraud coexist." Ben Farmer Realty Co. v. Woodard, 441 S.E.2d 421, 422 (Ga. Ct. App. 1994).

[4] Because the Court finds that Plaintiff has waived the right to common law rescission under Georgia law, the Court does not decide at this time Defendant's arguments that Plaintiff's fraud and mistake allegations fail on the merits. The Court suspects however, that should Plaintiff refile its Complaint, these issues will arise again. If so, the Court expects Plaintiff to provide better organization, more analysis of the relevant cases, and less wholesale quotations of Georgia law.

theory, Plaintiff does not properly allege a rejection of goods/revocation of acceptance claim because the contract is not facially deficient and Plaintiff does not allege that Defendant's software breaches any contract term.

> i. *The Contract's Merger Clause Makes Defendant's Pre-Contractual Representations Non-Actionable Under a Rejection/Revocation Claim, and Plaintiff Has Not Plead That Defendant's Software Breached the Contract*

Defendant argues that Plaintiff's second claim for rejection of goods/revocation of acceptance fails because nowhere does Plaintiff actually allege that Defendant's software failed in some respect to conform to the parties' License Agreement. (*Def.'s Mot.* 13.) To the extent that Plaintiff relies on pre-contractual representations, Defendant contends, the contract's merger clause makes the prior representations non-actionable. (*Id.* 14.) In response, Plaintiff summarily argues that Georgia case law provides remedies even in some circumstances where a contract limits all warranties. (*Pl.'s Opp'n* 8–9.)

Goods do not conform to a contract when they are not in accordance with the terms and obligations under the contract. Ga. Code Ann. § 11-2-106(2) (2007). Under Georgia law, a buyer may reject goods under a contract if the goods fail in any respect to conform to the contract. Ga. Code Ann. § 11-2-601 (2007). Additionally, a buyer may revoke his acceptance of nonconforming goods if the nonconformity substantially impairs the value to him. Ga. Code Ann. § 11-2-608 (2007).

If a court finds that a writing was intended to be a final, complete and exclusive statement of the terms of an agreement, the writing cannot be supplemented by evidence of any prior agreements or contemporaneous oral agreements. Ga. Code Ann. § 11-2-202 (2007); <u>see also</u> Ga. Code Ann. § 13-2-2(1) (2007) (stating that parol evidence is inadmissable to add to, take from, or vary a written contract). For example, prior marketing or sales materials cannot be incorporated into a contract if the written

contract, by its terms, constitutes the entire agreement between the parties and contains no express warranties relevant to the prior representations. See <u>Webster v. Sensormatic Electronic Corp.</u>, 389 S.E.2d 15, 16 (Ga. Ct. App. 1989) (finding statements in pre-contractual sales brochure not actionable where contract expressly disclaimed warranties).

    Here, the parties' written License Agreement contains a merger clause, thus making the writing the final and exclusive statement of the agreement's terms. (*License Agreement* § 15(K).) Plaintiff, however, fails to allege how Defendant's software is nonconforming to any of the contract's terms. Although Plaintiff grouses about Defendant's "unfulfilled representations" and "uncorrectable defects," (*Am. Compl.* ¶ 37), nowhere does Plaintiff actually allege that Defendant's software fails to conform to a particular term, warranty, or obligation found in the contract.[5] Like the operation of the merger clause in <u>Webster</u>, Plaintiff cannot state a valid claim by simply alleging that the software does not perform as Defendant's salesmen promised, before the contract was signed.

    Moreover, although under Federal Rule of Civil Procedure 8 Plaintiff must only provide a short and plain statement of his claim, the Court cannot equate Plaintiff's vague "uncorrectable defects" allegation with Defendant breaching its limited obligations under the License Agreement. Accordingly, under the theory that Defendant delivered defective software, Plaintiff fails to state a claim for rejection of goods or revocation of acceptance because it does not allege that the software received is nonconforming to any term or obligation under the contract.

       ii.    *Plaintiff Does Not Properly Plead A Failure of Purpose or Breach of The Repair Warranty*

Defendant argues that Plaintiff cannot claim that any repair remedy "failed of its

---

[5] For example, Plaintiff does not allege that the software does not conform to the published specifications set forth in the Software documentation, incorporated by reference into the License Agreement.

essential purpose" because Plaintiff has not alleged a predicate breach of warranty: that is, the software failed to conform to the contract, and thus necessitated the exclusive remedy of repair. (*Def.'s Mot.* 14.) Plaintiff responds by citing Georgia case law which holds that the UCC provides a general remedy besides any warranty, and an attempt to limit the statutory remedy will be held ineffective to remove the remedy. (*Pl.'s Opp'n* 9.) Despite Plaintiff's singular explication, the Court finds that Plaintiff's argument actually contains several related doctrines which—under limited circumstances—resurrect disclaimed warranties and supplement limited remedies.

First, where circumstances cause an exclusive or limited remedy to fail of its essential purpose, a plaintiff may be able to revoke acceptance and recapture his purchase price. Ga. Code Ann. § 11-2-719(2) (2007). For example, courts have used section 11-2-719(2) to protect automobile buyers who were third party beneficiaries of repair reimbursement contracts between manufacturers and dealers, where the dealer had disclaimed all warranties to the buyer and the manufacturer had gone out of business. See Freeman v. Hubco Leasing, Inc., 324 S.E.2d 462 (Ga. 1985), Esquire Mobile Homes, Inc. v. Arrendale, 356 S.E.2d 250 (Ga. Ct. App. 1987).

In both Freeman and Esquire, the plaintiff-buyers were obligated to pay the dealer a substantial balance and were not protected by any dealer warranty or remedy whatsoever; only the manufacturer warranted the automobile and promised to reimburse the dealer for repairs. See Freeman, 324 S.E.2d at 470 ("the [dealer] takes no responsibility for the performance of the... vehicle despite the [buyer's] obligation to pay over $47,000...."), Esquire, 356 S.E.2d at 253 ("[Dealer] took no responsibility for the merchantability and fitness of the [automobile] despite [buyer's] obligation to pay over $66,000...."). Although the dealer disclaimed all warranties, the buyer could revoke acceptance because the dealer had a *separate* obligation to repair, arising from the manufacturer's warranty adopted and transmitted by the dealer. Freeman, 324 S.E.2d at 467 (emphasis added). Because parties must accept that there be at least a fair quantum of remedy for breach, an apparently fair and reasonable disclaimer, which

because of circumstances deprives a party of the bargain's substantial value, must fail and give way to general UCC remedies. Freeman, S.E.2d at 469, Esquire, 356 S.E.2d at 252. Thus, the dealer clauses limiting all damages and avoiding all remedies were found unconscionable, and the buyers were allowed to revoke acceptance per section 11-2-608. Freeman, S.E.2d at 470, Esquire, 356 S.E.2d at 253.

Relatedly, if a seller attempts to deprive the buyer of the substantial value of the bargain by including a contract clause excluding all express or implied warranties, the UCC's general remedy provisions take effect. Advanced Computer Sales, Inc. v. Sizemore, 366 S.E.2d 303, 305 (Ga. Ct. App. 1988).[6] This is because it would be unreasonable to allow an express warranty contained in a contract to be negated by a disclaimer of warranty in the same contract, for the two provisions would not be consistent with each other. Century Dodge v. Mobley, 272 S.E.2d 502, 504 (Ga. Ct. App. 1980). The express warranty and express disclaimer cancel each other out, leaving the general UCC remedy.

Georgia courts have also allowed buyers to revoke acceptance when the exclusive remedy available under warranty is the remedy of repair, and the seller refuses to repair or unsuccessfully repairs. See Stephens v. Crittenden Tractor Co., 370 S.E.2d 757, 761–62 (Ga. Ct. App. 1988), Jacobs v. Metro Chrysler-Plymouth, Inc., 188 S.E.2d 250, 253–54 (Ga. Ct. App. 1972). Both Stephens and Jacobs presuppose that the seller initially provided nonconforming or defective goods, triggering the buyer's exclusive repair remedy, which the seller subsequently also breached. Stephens, 370 S.E.2d at 759, Jacobs, 188 S.E.2d at 253. The Jacobs court characterized the limited remedy of repair as a separate warranty, the breach of which could be followed by revocation of

---

[6] Although Plaintiff cites Advanced Computer Systems for the proposition that revocation of acceptance is always an available remedy, even where the seller has attempted to limit its warranties, Advanced Computer Systems, 366 S.E.2d at 305, the Court declines to read Advanced Computer Systems so broadly. First, Advanced Computer Systems relies on Freeman, a Georgia Supreme Court case (discussed above) with a much more nuanced holding. Additionally, the Advanced Computer Systems court does not mention whether the parties' contract *limited* the remedies for breach, or expressly disclaimed *all* warranties and remedies (the latter bringing it closer to Century Dodge and less like the instant case, where Defendant made limited warranties and provided limited remedies).

acceptance. <u>Jacobs</u>, 188 S.E.2d at 253–54.

Unfortunately for Plaintiff, its second cause of action as alleged does not state a valid claim under any of the above cases or doctrines. First, Plaintiff does not allege a <u>Freeman</u> or <u>Esquire</u> situation because, although Defendant disclaimed express and implied warranties, Plaintiff does not allege that Defendant remains obligated under some derivative warranty with a third party. As discussed below, Plaintiff cannot allege that its repair remedy failed of its essential purpose because Plaintiff does not properly allege that Defendant was obligated to provide the repair remedy in the first place.

Nor does Plaintiff allege an <u>Advanced Computer Systems</u> or <u>Century Dodge</u> situation. The License Agreement between Plaintiff and Defendant does not disclaim *all* warranties and remedies expressed elsewhere; rather, the contract warrants that the software will conform to the Software documentation and limits Plaintiff's remedy to Defendant's maintenance obligations. (*License Agreement* §§ 4, 7(B).) Simply, under the contract's terms, Defendant retains delivery and repair obligations and does not attempt to deprive Plaintiff of the substantial value of the bargain. <u>See</u> <u>also</u> Ga. Code Ann. 11-2-316(4) (2007) (stating that remedies for breach can be permissibly limited by contractual modification of remedy). Presently applying Georgia law to Plaintiff's allegations, the UCC does not operate to supplant Plaintiff's exclusive remedy of repair.

Finally, Plaintiff does not properly allege the breach and failure of an exclusive repair remedy under <u>Stephens</u> or <u>Jacobs</u>. Although Plaintiff complains that Defendant failed to properly fix or implement the iRenaissance software, Plaintiff does not properly tether Defendant's obligation to provide a repair remedy to an underlying breach of warranty. In other words, under the contract Defendant is in no way obligated to provide the maintenance remedy unless and until Defendant breaches the warranty in the License Agreement, section 7 (reflected, too, in the License Agreement, section 4(A)(i)). Succinctly, because Plaintiff fails to actually allege an underlying breach of contract, the Court must **GRANT** Defendant's motion and **DISMISS WITHOUT PREJUDICE** Plaintiff's second claim for rejection of goods/revocation of acceptance

under all of the potential theories Plaintiff provides.  As the Court has dismissed both of Plaintiff's claims, it does not reach the parties' remaining arguments regarding unconscionability, damage caps, or anything else.

### IV.  CONCLUSION

For the above reasons, the Court **GRANTS** Defendant's motion to dismiss and **DISMISSES** both of Plaintiff's claims **WITHOUT PREJUDICE**.  Should Plaintiff choose, it may file an amended complaint by <u>May 2, 2008</u>.  As Plaintiff will be filing its action for a third time, the Court suggests that Plaintiff take extra care to research and analyze the applicable Georgia law.

IT IS SO ORDERED.

Dated: April 4, 2008

Hon. THOMAS J. WHELAN
United States District Court
Southern District of California