UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PURE BIOSCIENCE, a California Corporation,<br><br>                                 Plaintiff,<br>  vs.<br><br>ROSS SYSTEMS, INC., a Delaware Corporation,<br><br>                               Defendant. | CASE NO. 07-CV-1117 W (WMC)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS (DOC. NO. 27)** |

Pending before the Court is Defendant Ross Systems, Inc.'s motion to dismiss Plaintiff Pure Bioscience's Second Amended Complaint ("SAC"). The Court takes the matter under submission and without oral argument. See S.D. Cal. Civ. R. 7.1(d.1). For the following reasons, the Court **DENIES** the motion (Doc. No. 27).

I.    BACKGROUND

The facts relevant to this motion are as follows.

Plaintiff Pure Bioscience ("Pure") is an El Cajon, California company engaged in complex process manufacturing in the chemical and life sciences industry. (SAC ¶¶1, 4.) Defendant Ross Systems, Inc. ("Ross"), is a Delaware corporation with its principal place of business in Atlanta, Georgia. (Id. ¶2.) Ross markets the "iRenaissance"

software package which purportedly helps chemical and life science manufacturers manage inventory and streamline production. (*Id.* ¶5.)

In July 2005, Pure and Ross started negotiating a deal whereby Pure would buy and implement the iRenaissance software package. (SAC ¶6.) Ross allegedly represented that iRenaissance would improve productivity, track inventory, and was easy to use. (*Id.*) Ross also allegedly made scores of other promises regarding iRenaissance's industry-specific capabilities. (*Id.*) In August 2005, Ross demonstrated to Pure a seemingly successful small-scale test of the iRenaissance package. (*Id.* ¶7.) On March 30, 2006, Pure and Ross executed the (1) Software License and Professional Agreement ("License Agreement") and (2) Statement of Work and Master Work Order for Pure Bioscience ("Work Statement"). (*See* SAC, Ex. 4 [License Agreement], and Ex. 5 [Work Statement].)

Under the License Agreement, Ross granted Pure a nonexclusive software license and promised to provide maintenance services for one year. (*License Agreement* §§2(A), 4(A).) Ross also warranted that the iRennaissance software would operate in substantial conformance with specifications set forth in the Software documentation. (*Id.* § 7(B).) The License Agreement also provided that the sole and exclusive remedy for breach of this warranty was the License Agreement's provision for maintenance services. (*Id.*)

Under the Work Statement, Ross agreed to assist Pure in implementing the iRenaissance software package. (*Work Statement* 3.) Pure, in preparation for the implementation, bought $35,000 worth of computer hardware. (SAC ¶10.)

On July 17, 2006, Ross started implementing the iRenaissance software on Pure's computer system. (*Id.* ¶11.) Numerous problems followed. (*Id.*) Pure alleges that the iRenaissance software did not perform as promised and Ross' implementation efforts and support staff were woefully deficient. (*Id.* ¶¶11–28.)

In late 2006 through first quarter 2007, Pure allegedly communicated to Ross dissatisfaction with the iRenaissance software and installation and gave Ross many

1 opportunities to remediate the problems. (*Id.* ¶29.)  Ross allegedly did not do so. (*Id.*)
2 On June 18, 2007, Pure allegedly provided Ross with a notice of rejection and/or
3 revocation of acceptance. (*Id.* ¶30.)

4      On June 20, 2007, Pure filed an action against Ross in this Court alleging breach
5 of contract, breach of express and implied warranty, and rejection of goods and/or
6 revocation of acceptance. Generally, Pure alleged that it had paid Ross $159,054.96
7 and received nothing of value in return. On September 12, 2007, Ross moved to dismiss
8 Pure's complaint. On October 24, 2007, Pure filed an amended complaint on roughly
9 the same facts, and on October 30, 2007, the Court denied Ross's motion to dismiss the
10 original complaint as moot.

11      On November 13, 2007, Ross moved to dismiss the amended complaint. By order
12 date April 4, 2008 (the "Order"), the Court granted Ross' motion without prejudice.
13 On May 1, 2008, Pure filed the SAC.  Ross' third motion to dismiss followed.

14

15 **II.     LEGAL STANDARD**

16      Rule 12(b)(6) permits the court to dismiss a complaint, or a count therein, for
17 failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A
18 motion to dismiss under this rule tests the complaint's sufficiency. See N. Star Int'l v.
19 Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of a claim according
20 to this rule is proper only in "extraordinary" cases. United States v. Redwood City, 640
21 F.2d 963, 966 (9th Cir. 1981).  However, where the facts and dates alleged in the
22 complaint indicate the claim is barred by the statute of limitations, a motion to dismiss
23 for failure to state a claim is appropriate. Jablon v. Dean Witter & Co., 614 F.2d 677,
24 682 (9th Cir. 1980).

25      Generally, the court may not consider material outside the complaint when ruling
26 on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d
27 1542, 1555 n.19 (9th Cir. 1990). However, the court may consider any documents
28 specifically identified in the complaint whose authenticity is not questioned by the

parties. <u>Fecht v. Price Co.</u>, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. <u>Id.</u> That said, the Court will consider both the License Agreement and Work Statement attached to Plaintiff's amended complaint and referenced by both parties.

### III. DISCUSSION

#### A. Pure Adequately Plead Breach of Contract.

Pure's first cause of action is for breach of contract. Ross argues that the claim is defective because, just as in the previous complaint, the claim is based on representations made before the License Agreement and Work Statement were signed, rather than any warranty in those documents. The Court disagrees.[1]

The Court dismissed the previous amended complaint because Pure failed to allege that Ross breached "any term, warranty, or obligation found in the contract." (*Order*, 9:11–12.) In the SAC, however, Pure alleges that Ross breached the "Contract by providing software to PURE which did not operate in substantial conformance with the published specifications set forth in the Software documentation, and otherwise." (*SAC*, ¶40.)

Section 7(B) of the License Agreement specifically provides that "Ross warrants the Software, as delivered by Ross, will operate in substantial conformance with the published specifications set forth in the Software documentation." Because the SAC alleges that the software did not operate in conformance with the specifications, Pure adequately alleged a breach of section 7(B).

Recognizing that Pure alleged a breach of section 7(B), Ross alternatively argues that the SAC is overly vague because Pure failed to identify which specifications were

---

[1] Ross challenges the second and third causes of action on the same ground as the breach of contract claim (i.e., Pure failed to adequately allege a breach of the License Agreement). Accordingly, for the same reasons addressed below, the Court rejects Ross' motion to dismiss those claims.

breached. But such specificity is not required at this juncture in the litigation. Federal pleading standards require Pure to provide a short plain statement of the case. Fed. R. Civ. P. 8. Ross' suggestion that <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007), significantly altered federal pleading rules in not accurate. <u>Twombly</u> simply requires factual allegations "to raise a right to relief above the speculative level." <u>Id.</u> at 1965.

Here, the SAC identifies numerous problems with the software and Ross' maintenance obligations. For example, Pure alleges that a software error "message occurred when creating a pick list for the MIXMAG stage of the AXEN30 process specification. The trial kit report displayed below indicated sufficient inventory. In any case the create a pick list facility should not indicate an insufficient inventory when inventory is available." (SAC ¶11(E).) Pure also alleges Software problems relating to manufacturing protocols (*Id.* ¶14) and with sales order entries (*Id.* ¶15).

Ross appears to contend that these errors do not constitute a breach of the Software specifications. However, the specifications are not before the Court. And because all reasonable inferences must be drawn in Pure's favor, the Court must assume that the error message relates to the specifications.

Moreover, the SAC also alleges that the software could not "go live." (SAC, ¶29.) According to Pure, the software's inability to go live necessarily means that the Software failed to perform in accordance with at least some of the specifications. (*Id.*, ¶ 29.) Because such an inference is reasonable, the Court finds that Pure has adequately alleged a breach of contract claim.[2]

//
//
//

---

[2] Because Pure has adequately alleged a breach of the License Agreement, at this time the Court need not decide (1) whether the term "Software documentation" is vague and, if so, (2) does the term refer to Exhibits 1–3 attached to the SAC. Pure is cautioned, however, that Exhibits 1–3 appear to be marketing materials, not Software documentation.

**B.      Ross' Request to Dismiss Pure's Damage Claims in Excess of $90,000 is Premature.**

Ross challenges Pure's request for damages in excess of the damage cap included in section 11(B) of the License Agreement, which limits damages to the $90,000 license fee.

Pure counters by arguing, among other things, that section 11(B) does not govern this dispute. In support of this argument, Pure relies on a provision in the Software documentation stating: "Liability for Direct Damages is limited to the cost of the materials." (*Opp.'n* 13:12–13, Ex. A.) Under this provision, Pure would be entitled to recover the "cost of materials" as opposed to the "license fee."

Ross' reply argues that the damage limitation in the Software documentation does not apply. But Ross' challenge to the breach of contract claim was premised on the notion that the Software documentation is part of the parties' agreement. Recognizing this contradiction, Ross now asserts that "the License Agreement purports to incorporate only the specifications in the Software documentation describing the Software's functionalities and does not reference or incorporate the limitation of liability Pure cites." (*Reply* 6:23–25.)

However, the License Agreement is not so clear; it simply provides, "Ross warrants the Software . . . will operate in substantial conformance with the published specifications set forth in the Software documentation." (*License Agreement* § 7(B).) And Ross fails to identify any language in either the License Agreement or Software documentation that clarifies that only the provisions dealing with the specifications apply. For this reason, the Court declines to decide at this time whether the damage cap applies, and thus denies Ross' request to dismiss the damage claims.

**C.      Ross' Request to Dismiss the Claim for Attorney's Fees is Denied.**

Finally, Ross challenges Pure's request for attorney's fees. Ross' argument is premised on the Court finding that Pure's three causes of action are defective and must

1  be dismissed: "the claim for attorneys fees must be dismissed because, for the reasons
2  discussed above, Pure's three causes of action fail to state a claim."  (*Mot.* 13:19–21.)
3  Because the Court denied Ross' motion to dismiss the three causes of action, Ross'
4  motion to dismiss the attorney's fees claim is also denied.

**IV.  CONCLUSION**

For the above reasons, the Court **DENIES** Ross' motion to dismiss.  (Doc. No. 27.)

**IT IS SO ORDERED.**

DATED:  September 8, 2008

_____
Hon. Thomas J. Whelan
United States District Judge